A07A2145. ALLSTATE INSURANCE COMPANY
v. SUTTON et al.
A07A2146. PJ SERVICES, INC. v. SUTTON et al.
A07A2147. SUTTON et al. v. ALLSTATE INSURANCE
COMPANY et al.
(658 SE2d 909)

PHIPPS, Judge.

These appeals arise from a dispute between homeowner Sharon Sutton on behalf of herself and her minor daughter, Sutton's homeowners insurance company, Allstate Insurance Company, and PJ Services, Inc., a company that performed repairs and remediation work after a plumbing leak in Sutton's house. We granted interlocutory review to Allstate and PJ Services to consider whether the trial court erred in denying motions for summary judgment brought by all parties, in denying a motion to strike documents brought by PJ Services, and in granting in part and denying in part a motion brought by Sutton under OCGA § 9-11-12. Sutton cross-appealed. For the reasons set forth below, we affirm in part and reverse in part.

We review the grant or denial of a motion for summary judgment de novo, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

> A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.[2]

The record shows that the plumbing leak occurred on February 6, 2002 and affected several rooms in Sutton's house. Sutton informed Allstate of the leak. Later that day, a representative of PJ Services arrived and set up equipment to dry the house. On February 14, PJ Services removed the equipment, telling Sutton that the floors were "absolutely dry." Allstate referred a contractor, who called Sutton to discuss repairs to her floor, but Sutton wanted to obtain bids from other contractors. Her efforts to find a contractor and schedule the

---

[1] *Osman v. Olde Plantation Apts. &c.*, 270 Ga. App. 627 (607 SE2d 236) (2004).

[2] *O'Connell v. Cora Bett Thomas Realty*, 254 Ga. App. 311 (563 SE2d 167) (2002) (footnotes omitted).

repairs were hampered by her work schedule, which limited when she could meet prospective contractors and have the repairs performed.

During the spring of 2002, Sutton began to suspect that there was mold in her house. She asked representatives of Allstate and PJ Services about a spot in her bedroom and about an odor in the house that she thought indicated the presence of mold. They informed her that there was no sign of mold. But Allstate arranged for an expert to inspect the house, who, after doing so, told Sutton that she found no indication of mold. The expert, however, later issued for Allstate a written report advising mold remediation.

In June 2002, a contractor obtained by Allstate began repairs on the house and, upon pulling up the floor, discovered water and mold in one of the areas affected by the February leak. Sutton and her family immediately moved out of the house. PJ Services began mold remediation work, but Allstate subsequently instructed PJ Services to stop working and PJ Services performed no further work on the house.

Meanwhile, on more than one occasion in the summer of 2002, Sutton threatened suit against Allstate. In August 2002, Allstate informed Sutton that, before further repairs and remediation could occur, she needed to repair a crawl space and another active leak in the house. Sutton disputed her responsibility for any other leak and the need for these repairs. She also contacted the state insurance commissioner and, in the fall of 2002, met with the insurance commissioner, representatives of Allstate and PJ Services, and an environmental expert to attempt to resolve her dispute with Allstate. The parties, however, never reached a resolution and the insurance commissioner ultimately closed its files on the matter.

On September 23, 2003, Sutton brought an action against Allstate and PJ Services. She subsequently voluntarily dismissed the action and filed the instant renewal action. Sutton charged Allstate with: breach of contract, breach of an implied duty of good faith and fair dealing, bad faith refusal to pay a claim, unfair trade practices, stubborn litigiousness supporting attorney fees, negligence, and fraud. Sutton charged PJ Services with: breach of contract, breach of an implied duty of good faith and fair dealing, stubborn litigiousness, negligence, and fraud. She asserted various damages, including physical injury and injury to real and personal property.

The trial court granted in part and denied in part Allstate's motion for summary judgment, and Allstate appeals the partial denial in Case No. A07A2145.[3] The court denied PJ Services' motion for summary judgment and motion to strike documents, and PJ

---

[3] The partial grant of summary judgment to Allstate is not at issue in Case No. A07A2145.

Services appeals these denials in Case No. A07A2146. The court granted in part and denied in part Sutton's motion to determine defenses and denied her motion for summary judgment, and Sutton appeals the denials in Case No. A07A2147.[4]

## Case No. A07A2145

1. Allstate argues that a one-year limitation provision in Sutton's insurance policy prohibits her action against it, and that the trial court erred in finding a jury question concerning whether the limitation provision should apply in this case. The policy pertinently provides: "No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." Sutton brought the action against Allstate more than one year after the inception of loss or damage. The trial court, however, found a question of fact concerning whether Allstate had waived the policy limitation provision through its settlement negotiations with Sutton, relying on *Nee v. State Farm Fire &c. Co.*[5]

In *Nee*, we reversed a grant of summary judgment to an insurer even though the homeowner had not filed suit within 12 months of his loss, as his policy required. In so doing, we held:

> It is a universal rule that, where the insurer, by its acts in negotiating for a settlement, has led the policyholder to believe that he will be paid without suit, the insurer cannot take advantage of a provision in the policy which requires the action to be brought in a certain time. . . . If the facts show that negotiations for a settlement have led the insured to believe that the claim would be paid by the insurer without a suit, this will constitute a waiver of the time requirement, and the insurer cannot take advantage thereof in a suit to recover the loss.[6]

The facts in *Nee* gave rise to a jury question about whether continuing settlement negotiations led the policyholder to believe that the limitation provision was waived.[7]

But settlement negotiations do not always give rise to a jury question on whether the policyholder was led to believe that he need

---

[4] The partial grant of Sutton's motion to determine defenses is not at issue in Case No. A07A2147.

[5] 142 Ga. App. 744 (236 SE2d 880) (1977).

[6] Id. at 746 (citations and punctuation omitted).

[7] Id. at 747.

not file suit, even if they continue throughout the policy's limitation period.[8] "[M]ere negotiation for settlement, unsuccessfully accomplished, is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense."[9] And where "inconclusive settlement negotiations were explicitly conditioned on the policy terms," the policyholder cannot create a jury issue by claiming a belief that the insurer would waive the contractual limitation provision.[10]

Here, Allstate explicitly conditioned its settlement negotiations with Sutton on the policy terms. In a July 16, 2002 letter, Allstate informed Sutton that it reserved "all rights and defenses" that it had under its policy with Sutton and stated:

> We further notify you that any activity on our part by way of investigation, damage determination, or emergency advance payments to you, does not constitute a waiver of our rights.

Allstate further advised Sutton in this letter that it would avail itself of all applicable policy defenses. We find "no showing in this record of any affirmative statement or other act by [Allstate] that would lead [Sutton] to believe that the insurer would waive the contractual limitation."[11]

There is no merit in Sutton's argument that the policy's one-year limitation provision is ambiguous. In numerous cases we have held that contractual limitation provisions such as the one here are valid and enforceable.[12]

Accordingly, we reverse the trial court's judgment denying in part Allstate's motion for summary judgment.

2. In light of our holding in Division 1, we need not consider Allstate's remaining claims of error.

---

[8] See *Shelter America Corp. v. Ga. Farm &c. Ins. Co.*, 209 Ga. App. 258, 259 (1) (433 SE2d 140) (1993) (upholding summary judgment in favor of insurer based on one-year limitation provision, even though insurer had engaged in settlement negotiations up to the period's expiration).

[9] *Ga. Farm &c. Ins. Co. v. Pawlowski*, 284 Ga. App. 183, 184 (1) (643 SE2d 239) (2007) (punctuation and footnote omitted).

[10] *Shelter America Corp.*, supra at 259; see also *Ga. Farm &c. Ins. Co. v. Nolan*, 180 Ga. App. 28, 29 (348 SE2d 554) (1986) (policyholder's testimony that the insured told him he would not be paid, underscored by demand letter written by his attorney, established that insurer had not waived contractual limitation provision by leading policyholder to believe claim would be paid).

[11] *Shelter America Corp.*, supra at 259.

[12] See, e.g., *Giles v. Nationwide Mut. Fire Ins. Co.*, 199 Ga. App. 483, 485 (2) (405 SE2d 112) (1991); *Herring v. Middle Ga. Mut. Ins. Co.*, 149 Ga. App. 585, 586 (254 SE2d 904) (1979).

## Case No. A07A2146

3. PJ Services contends that the trial court erred in denying its motion for summary judgment on Sutton's negligence claim. The essential elements of a negligence action are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury.[13] Questions of negligence generally are for the jury, and may be resolved on summary judgment "only where the evidence is plain, palpable and undisputable."[14] For the reasons explained below, we affirm the trial court's denial of summary judgment on Sutton's claim for property damages arising from PJ Service's alleged negligence, but we reverse the denial of summary judgment on her claim for personal injuries resulting from the alleged negligence.

(a) PJ Services argues that it owed Sutton no duty of care. But it is undisputed that PJ Services undertook to perform work at Sutton's house, and Georgia law "imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken."[15]

PJ Services argues that Sutton produced no evidence that it breached any duty in performing the work at Sutton's house. It asserts that Sutton has presented only speculation and conclusory allegations concerning any causal connection between the water and mold found in June 2002 and the work performed by PJ Services four months earlier.[16] Sutton's own testimony (through deposition, affidavits, and verified complaint) forms the bulk of the evidence presented to oppose summary judgment, and she was fully competent to testify to her personal observations about the work performed by PJ Services and the condition of her house during and after that work. This evidence, viewed most favorably to Sutton, showed that in February 2002 PJ Services undertook to provide Sutton with services to remediate the damage caused by the water leak in her house; that PJ Services later informed Sutton that it had completed this work and the house was "absolutely dry"; that in the month following the work, Sutton observed in the house what she believed to be mold; and

---

[13] *Morton v. Horace Mann Ins. Co.*, 282 Ga. App. 734, 735 (1) (639 SE2d 352) (2006).

[14] *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 864 (2) (596 SE2d 604) (2004) (citation and punctuation omitted).

[15] *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 197 (1) (375 SE2d 117) (1988) (citation and punctuation omitted).

[16] See *Empire Shoe Co. v. NICO Indus.*, 197 Ga. App. 411, 414 (2) (398 SE2d 440) (1990) ("[a]llegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment") (citations and punctuation omitted).

that subsequently Sutton found standing water and mold under the floor of one of the rooms that PJ Services claimed to have remediated.

From the evidence that mold and water were in the area where the earlier flooding occurred, and that in the interim Sutton had seen and smelled indications of mold, a jury could infer that the mold subsequently discovered in the house resulted from the February 2002 flood and that PJ Services' remediation efforts were not successful.[17] The evidence thus creates a jury question as to whether PJ Services breached its duty to Sutton in performing the remediation work.[18]

Sutton testified to damages to her real and personal property from the mold. PJ Services argues that its actions did not proximately cause this harm. But the evidence reflects several disputes concerning the nature and extent of the services performed by PJ Services between February and June 2002 (when water and mold were found in the house), Sutton's level of cooperation with PJ Services, the condition of the house when PJ Services finished its February 2002 work, and the representations made by PJ Services to Sutton about the condition of the house. We find a jury question on whether Sutton's claimed damage was proximately caused by PJ Services' work.[19]

Accordingly, we affirm the trial court's denial of summary judgment to PJ Services on Sutton's negligence claim.

(b) PJ Services, however, is entitled to summary judgment on Sutton's claim for personal physical injury arising from the alleged negligence. Sutton contends that she and her daughter suffered ongoing or exacerbated respiratory conditions that she attributed to their exposure to mold, and in connection with this claim she attached to her affidavit a "compendium of medical reports" and other medical documents related to injuries allegedly received by Sutton and her daughter. As a preliminary matter, we note that Sutton has not provided record cites to any certification of these medical records by their custodians, and in our search of the several hundred pages of the record we have found no such certification.[20] Moreover, Sutton has not cited to any expert medical testimony submitted to the trial court establishing a causal link between the respiratory conditions of

---

[17] See *Davis v. Piedmont Hosp.*, 222 Ga. App. 97, 99 (473 SE2d 513) (1996) (nature of organic matter on which plaintiff slipped and fell suggested that it may have been present for sufficient time to allow its growth).

[18] See *Ricketts v. Advanced Dental Care*, 285 Ga. App. 480, 487 (1) (646 SE2d 705) (2007).

[19] See *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 687 (2) (572 SE2d 533) (2002) (proximate cause generally is jury question).

[20] See OCGA § 24-7-8 (b) (allowing for authentication of medical records through custodian's certification).

herself or her daughter and the mold in the house, and we find none in the record. The diagnosis and potential continuance of a disease or other medical condition are "medical questions to be established by physicians as expert witnesses and not by lay persons."[21] Thus, we have required expert medical testimony, "based at least on reasonable probability," to establish a causal link between exposure to a substance and a medical condition.[22] The Supreme Court's decision in *Self v. Exec. Committee &c.*,[23] cited by Sutton, did not address whether a medical condition was caused by exposure to a certain substance. Rather, *Self* concerned whether a blow to the head could cause death, a question that we have held to be within a lay person's knowledge.[24]

Accordingly, we reverse the trial court's denial of summary judgment to PJ Services on the claim for negligence damages based on personal injury.

4. PJ Services contends that there is no evidence to support Sutton's contract claim, which is based on a theory that she was a third-party beneficiary to a contract between PJ Services and Allstate. The record contains no written contract between PJ Services and Allstate concerning PJ Services' work for Sutton, and in a verified answer PJ Services denied the existence of such a contract. The trial court, however, ruled that PJ Services had made an admission in judicio that it performed the work for Sutton under a contract with a different entity when, at the summary judgment hearing, its counsel stated that PJ Services "had a contract with ... a third-party company who was in between [PJ Services] and Allstate." The record contains no such written contract.

To support a breach of contract action brought by a nonparty, the contract must contain a promise to render some performance to a third person and it must evince both parties' intent that the third person be the beneficiary.[25] Moreover, the rights of a third party can be no greater than those granted to the parties under the contract, and thus construction of the contract is required to determine the

---

[21] *Hunnicutt v. Hunnicutt*, 237 Ga. 497 (228 SE2d 881) (1976); see also *Gilbert v. R. J. Taylor Mem. Hosp.*, 265 Ga. 580, 581, n. 4 (458 SE2d 341) (1995); *Jones v. Orris*, 274 Ga. App. 52, 57 (2) (616 SE2d 820) (2005).

[22] *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 857 (2) (459 SE2d 592) (1995) (citation and punctuation omitted).

[23] 245 Ga. 548 (266 SE2d 168) (1980).

[24] See *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 518 (1) (352 SE2d 832) (1987) (discussing *Self*, supra); *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 206 (3) (345 SE2d 904) (1986) (same).

[25] *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 392 (1) (367 SE2d 278) (1988).

third-party's rights.[26] "The mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient."[27]

Sutton offers no evidence of the terms of a contract under which PJ Services performed work at her house. When PJ Services pointed to the lack of evidence concerning the contract terms, Sutton had the burden of coming forward with evidence to demonstrate those terms.[28] Sutton argues that her verified complaint satisfied this burden. Pretermitting whether Sutton could survive summary judgment on her contract claim by swearing to the terms of a contract not in the record, Sutton has not alleged in her verified complaint personal knowledge of those terms.[29]

Accordingly, we reverse the trial court's denial of summary judgment to PJ Services on the contract claim.

5. PJ Services argues that the trial court erred in finding a jury question on Sutton's fraud claim.

> To survive a motion for summary judgment in an action for fraud . . . , a plaintiff must come forward with some evidence from which a jury could find each of the following elements: false representation; scienter; intent to induce the plaintiff to act or refrain from acting; justifiable reliance; and damage proximately caused by the representation.[30]

Sutton attributes various misrepresentations and omissions to PJ Services. She claims that, in making these statements, PJ Services intended to induce her to accept a lower settlement of her insurance claim against Allstate, accept "substandard" work in her house, and injure her health.

Some of the alleged misrepresentations were merely promises regarding future action or representations regarding matters of law that will not support a claim for fraud.[31] Others involved statements made shortly before or after the mold was discovered in June 2002, when Sutton moved out of her house and began threatening legal

---

[26] Id.

[27] *Backus v. Chilivis*, 236 Ga. 500, 502 (II) (224 SE2d 370) (1976) (citations omitted).

[28] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[29] See *Hansen v. Mt. Yonah Scenic Estates Club*, 227 Ga. App. 258, 259 (488 SE2d 732) (1997) ("a verified pleading has no greater effect than an affidavit tendered pursuant to OCGA § 9-11-56 (e) and must comply with the Rule 56 (e) requirement that both supporting and opposing affidavits shall be made on personal knowledge").

[30] *JarAllah v. Schoen*, 243 Ga. App. 402, 403-404 (1) (531 SE2d 778) (2000) (footnote omitted).

[31] See *Mallen v. Mallen*, 280 Ga. 43, 45 (1) (a) (622 SE2d 812) (2005); *Robbins v. Nat. Bank of Ga.*, 241 Ga. 538, 543 (2) (246 SE2d 660) (1978).

action. There is no evidence to support Sutton's assertion that she relied on these later statements to her detriment.

Sutton contends that PJ Services committed fraud when it told her on February 14, 2002 that her house was "absolutely dry." But Sutton has not presented any evidence that PJ Services knew at the time that this representation was not true. Generally, scienter is a jury question.[32] "While fraud may be proved by slight circumstances, it must amount to more than mere speculation,"[33] and mere speculation concerning scienter is not enough to allow a fraud claim to go to a jury.[34] Sutton argues that the later discovery of water and mold beneath the flooring in the house is evidence that PJ Services knew in February that the house was not dry. We disagree. This evidence may support an inference that PJ Services did not perform its work properly,[35] but it does not support an inference that PJ Services knew of the water and mold when it made representations to the contrary to Sutton.

Finally, Sutton contends that PJ Services committed fraud when it told her that there was "no mold" resulting from the February leak. This allegation appears to refer to statements that Sutton alleges PJ Services made in the spring of 2002 in connection with Sutton's concerns about a spot in her bedroom and an odor in her house that she suspected was mold. But Sutton testified that, despite PJ Services' statement that it did not find signs of mold in the house, she successfully pressed Allstate to have an expert inspect the house for mold. There is no evidence that Sutton relied to her detriment upon this representation of PJ Services.

Accordingly, we reverse the trial court's denial of summary judgment to PJ Services on Sutton's fraud claim.

6. PJ Services challenges the trial court's denial of its motion to strike medical records and other documents attached to Sutton's affidavit as not complying with the requirements of OCGA § 9-11-56 (c). Assuming without deciding that PJ Services is correct in its assertions that these documents were not admissible, we nevertheless find no cause for reversal, because the inclusion of these documents in evidence did not harm PJ Services. As discussed above, this evidence was not sufficient to create a jury question on Sutton's claims for breach of contract, fraud or negligence damages based on personal injury. And the record contains sufficient evidence to create a jury question on PJ Services' negligence without considering the

---

[32] *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 894-895 (537 SE2d 138) (2000).

[33] *Clay v. Clay*, 269 Ga. 527 (501 SE2d 208) (1998).

[34] See *ReMax*, supra.

[35] See Division 3, supra.

contested documents. Finding no prejudice, we affirm the trial court's ruling on the motion to strike documents.[36]

7. In light of our holdings in Divisions 4 and 5, we need not consider PJ Services' remaining claim of error.

### Case No. A07A2147

8. Because the limitation provision of Sutton's homeowner's insurance policy bars her action against Allstate,[37] we affirm the trial court's denial of Sutton's motion for summary judgment on her claims against Allstate.

9. In light of our holdings in Case No. A07A2146, we affirm the trial court's denial of Sutton's motion for summary judgment on her claims against PJ Services.

10. Sutton challenges the trial court's partial denial of her motion to determine defenses, but offers no specific arguments. To the extent she contests the trial court's rulings with respect to Allstate, we affirm the trial court's rulings in light of our disposition of Case No. A07A2145. The only ruling adverse to Sutton on any of PJ Services' defenses involves a claim for attorney fees under OCGA § 13-6-11. Because Sutton has not offered any argument or legal authority to support a contention that the trial court erred in so ruling, we deem her claim of error abandoned and affirm the ruling.[38]

*Judgment reversed in Case No. A07A2145. Judgments affirmed in part and reversed in part in Case No. A07A2146. Judgments affirmed in Case No. A07A2147. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 7, 2008 — 

*Webb, Zschunke, Neary & Dikeman, William E. Zschunke, Melissa C. Patton,* for Allstate Insurance Company et al.

*Knight & Green, Donald K. Knight, Jr.,* for Sutton et al.

*Magill & Atkinson, David M. Atkinson, Jonathan A. Barash,* for PJ Services, Inc.

---

[36] See *Howard v. St. Paul Fire &c. Ins. Co.,* 180 Ga. App. 802, 804-805 (2) (350 SE2d 776) (1986).

[37] See Division 1, supra.

[38] See *Imm v. Chaney,* 287 Ga. App. 606, 610 (12) (651 SE2d 855) (2007).