A10A0905. STONE MOUNTAIN COLLISION CENTER
v. GENERAL CASUALTY COMPANY OF WISCONSIN.
(705 SE2d 163)

MIKELL, Judge.

Stone Mountain Collision Center filed an action against its insurer, General Casualty Company of Wisconsin, alleging breach of its insurance contract. General Casualty moved for summary judgment, arguing that the complaint was barred by the two-year limitation period contained in the applicable insurance policy. The trial court agreed with General Casualty and granted its motion for summary judgment. On appeal, Stone Mountain Collision argues that General Casualty waived the limitation period. We disagree and affirm the judgment of the trial court.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Stone Mountain Collision purchased a commercial policy from General Casualty,[2] which was effective from April 9, 2005 to April 9, 2006. The insurance policy provided that any action against the insurer must be "brought within 2 years after the date on which the direct physical loss or damage occurred." Stone Mountain Collision suffered a loss from theft during November of 2005. Steve McClearn, owner of Stone Mountain Collision, informed General Casualty of the loss on January 16, 2006. In a reservation of rights letter dated February 7, 2006, Teresa Nabors, a claim analyst with General Casualty, informed

---

[1] *Morrill v. Cotton States Mut. Ins. Co.*, 293 Ga. App. 259 (666 SE2d 582) (2008), citing *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] The named insurer on the policy was Southern Guaranty Insurance Companies.

McClearn that there was a problem regarding coverage and that although General Casualty would investigate the claim, it would not waive its right to assert as defenses the provisions in the policy.

On February 13, 2006, McClearn was instructed to send all future correspondence regarding his claim to Michael Manning of Independent Adjusters. On November 17, 2006, Manning sent a letter to McClearn offering to settle the claim at the actual cash value of $75,577.85, upon receipt of the proof of loss, and informed McClearn that if he replaced the tools within 180 days as provided by the policy, he may be able to claim some or all of an additional $17,533.97, which would be held by General Casualty. On January 23, 2007, Manning extended the same offer, enclosing another copy of the proof of loss form. On January 26, 2007, Manning sent another letter to McClearn, specifically rejecting counteroffers of $130,000 and $84,537.71, and extending the same offer made in the two previous letters. On May 17, 2007, Manning extended the deadline to purchase replacement tools to June 17, 2007, and restated the previous offer.

On March 3 and 12, 2008, Stone Mountain Collision's attorney forwarded letters of representation to Manning asking that Manning contact him to resolve the case. In a letter to Nabors, the insurer's claim analyst, on April 3, 2008, Stone Mountain Collision demanded $84,557 to settle the case, referencing prior conversations between McClearn and Manning, from which McClearn concluded that General Casualty would settle the case for $84,000. On April 29, 2008, Nabors forwarded another proof of loss form to Stone Mountain Collision, extending the same offer made by Manning and indicating that General Casualty would issue a check in that amount upon its receipt of the proof of loss. On June 20, 2008, Stone Mountain Collision sent Nabors the original sworn proof of loss but changed the claim amount to $84,287.58. On July 1, 2008, Nabors again restated the offer. On July 3, 2008, Stone Mountain Collision rejected General Casualty's offer but indicated its desire to continue to negotiate. When the insurer failed to respond, Stone Mountain Collision filed a complaint on or about July 23, 2008. General Casualty filed a motion for summary judgment, which the trial court granted on the ground that the two-year contractual limitation period barred Stone Mountain Collision's action.

On appeal, Stone Mountain Collision argues that the trial court erroneously granted summary judgment to General Casualty because a genuine issue of fact remains as to whether the insurer waived the limitation period. In support of its argument, Stone

Mountain Collision relies on *Auto-Owners Insurance Co. v. Ogden*,[3] in which the Supreme Court ruled that

> [i]f the insurer never denied liability, but continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the [limitations] clause in the contract was waived by the insurer can become a disputed question of fact for the jury.[4]

The rule in *Ogden* comports with the universal rule that an insurer cannot take advantage of a limitation provision in the policy where, by its acts in negotiating toward settlement, it has led the policyholder to believe that he will be paid without filing a suit.[5] But it is also true that

> settlement negotiations do not always give rise to a jury question on whether the policyholder was led to believe that he need not file suit, even if they continue throughout the policy's limitation period. Mere negotiation for settlement, unsuccessfully accomplished, is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense.[6]

In *Ogden*,[7] the insurance company admitted liability, issued a check to the insured to reconstruct his home, and instructed the insured to return a proof of loss within 15 days to receive the remaining amount due under the claim.[8] In the instant case, however, there was never an agreement about what the insured would be paid. Rather, General Casualty extended the same offer several times, which Stone Mountain Collision rejected with various counteroffers. The last written communication between the parties occurred on May 17, 2007, when General Casualty gave Stone

---

[3] 275 Ga. 565 (569 SE2d 833) (2002).

[4] (Punctuation and footnote omitted.) Id. at 567 (2). See also *Nee v. State Farm Fire & Cas. Co.*, 142 Ga. App. 744, 746-747 (236 SE2d 880) (1977) (issue of fact presented where the insurer sought a meeting to discuss the value of the claim within 45 days of the close of the limitation period but denied liability once suit was filed).

[5] *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 156 (1) (658 SE2d 909) (2008). Accord *Morrill*, supra at 262 (2) (a).

[6] (Punctuation and footnotes omitted). *Sutton*, supra at 156-157 (1); *Morrill*, supra at 263 (2) (a); *Ga. Farm Bureau Mut. Ins. Co. v. Pawlowski*, 284 Ga. App. 183, 184 (1) (643 SE2d 239) (2007) ("[e]vidence that [an insurance company] investigated and offered to settle does not suggest that it tried to trick [its insured] into believing that it intended to enlarge the . . . limitation period").

[7] Supra.

[8] Id. at 565.

Mountain Collision 30 additional days to purchase replacement tools. The record contains no other evidence of negotiations between the parties before the limitation period expired, in November of 2007, from which Stone Mountain Collision could infer that General Casualty had agreed to extend the limitation period. Accordingly, we cannot conclude that the negotiations that occurred lulled Stone Mountain Collision into believing that it would not have to file suit.[9]

> [T]o conclude that the policy limitations have been waived or estopped, there must be an affirmative promise or other act waiving the limitation, or an actual or constructive fraud leading the insured to believe the limitation period would be enlarged, or lulling him into the security of actually thinking that the claim would in fact be paid without suit.[10]

There is no evidence of such act or fraud in the instant case. Stone Mountain Collision argues that the fact that Nabors sent letters extending the offer after the expiration of the limitation period creates a jury question as to whether General Casualty waived the limitation period. But a claims adjuster is not authorized to waive a contractual limitation period without express authority from the insurance company,[11] and Stone Mountain Collision points to no evidence that said authority existed. Stone Mountain Collision also urges us to consider the fact that General Casualty sent proofs of loss after the expiration of the limitation period, but an insurer does not waive its defenses by furnishing to its insured a blank proof of loss or receiving or acknowledging receipt of a proof of loss.[12] Therefore, the evidence did not create a question of fact as to the issue of waiver, and we affirm the grant of summary judgment to General Casualty.

---

[9] See *Pawlowski*, supra; OCGA § 33-24-40 (3) (an insurance company does not waive its defenses when it engages in negotiations to attempt to settle any loss or claim). See also *Giles v. Nationwide Mut. Fire Ins. Co.*, 199 Ga. App. 483, 485 (3) (405 SE2d 112) (1991) (summary judgment appropriate where undisputed evidence showed that parties unsuccessfully concluded negotiations before limitation period expired and no evidence of promise, statement or other act to lead insured to believe limitation period would be enlarged). Compare *Ga. Farm Bureau Mut. Ins. Co. v. Mikell*, 126 Ga. App. 640, 642-643 (2) (191 SE2d 557) (1972) (waiver issue properly sent to jury where insured requested appraisal within limitation period, insurance company sent letter enclosing proof of loss and informing insured that he could demand appraisal within 60 days of insurer receiving proof of loss, then insurer informed insured that it was relying on limitation period that expired before 60 days referred to in its letter).

[10] (Citation and punctuation omitted.) *Stapleton v. Gen. Accident Ins. Co.*, 236 Ga. App. 835, 838 (512 SE2d 645) (1999).

[11] *Ogden*, supra at 566 (1). The claims adjuster in *Ogden* sent a letter after the expiration of the contractual limitation period, indicating that the insurer would consider payment. Id.

[12] See OCGA § 33-24-40 (2).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 10, 2010 —
RECONSIDERATION DENIED DECEMBER 15, 2010.

*Douglas R. Daum*, for appellant.
*Carlock, Copeland & Stair, Hillary A. Shawkat, William P. Tinkler, Jr.*, for appellee.