**FOURTH DIVISION
DILLARD, P. J.,
RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 5, 2020**

# In the Court of Appeals of Georgia

A20A0373. PREMIER EYE ASSOCIATES, P.C. v. MAG
  MUTUAL INSURANCE COMPANY.

DILLARD, Presiding Judge.

Premier Eye Care Associates, P.C. appeals the trial court's dismissal of its action against MAG Mutual Insurance Company for nonpayment of claims on an insurance policy issued by MAG to Premier. Specifically, Premier argues that the trial court erred by (1) failing to apply the correct legal standard in considering a motion to dismiss; (2) granting the motion to dismiss based on a contractual time limitation in the insurance policy; and (3) allowing MAG to enforce a contractual forfeiture provision when it was in breach of the policy. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to Premier,[1] the record shows that Premier is a professional corporation solely owned by an ophthalmologic surgeon, Linda Szekeresh. On May 8, 2013, in connection with the operation of Szekeresh's medical office, Premier purchased the MAG insurance policy at issue. Subsequently, on the evening of September 19, 2013, Premier's medical office suffered catastrophic flood damage due to thousands of gallons of water mixed with liquefied grease that poured into it from the suite above, which was occupied by a pizza restaurant called Blue Jeans Pizza. Within hours of discovering the flood, Premier contacted MAG to file a claim under its policy.

---

[1] In ruling on a motion to dismiss, the trial court must "accept as true all well-[pleaded] material allegations in the complaint and must resolve any doubts in favor of the plaintiff." *Roberson v. Northrup*, 302 Ga. App. 405, 405 (691 SE2d 547) (2010) (punctuation omitted). But when matters outside the pleadings are considered by the trial court on a motion to dismiss for failure to state a claim, the motion is "converted to a motion for summary judgment [under] OCGA § 9-11-56 . . . ." *Davis v. Phoebe Putney Health Sys., Inc.*, 280 Ga. App. 505, 507 (2) (634 SE2d 452) (2006) (punctuation omitted). As discussed more fully *infra*, while the trial court purports to grant MAG's motion to dismiss Premier's complaint for failure to state a claim, its order shows that it considered matters outside of the complaint, including exhibits attached to both the motion and Premier's response. In doing so, the trial court converted MAG's motion to dismiss into one for summary judgment. In reviewing the grant of summary judgment, we must "view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (punctuation omitted). But due to the limited nature of the evidence attached to the parties filings, some of the undisputed facts detailed in this opinion are gleaned from Premier's complaint.

In the days that followed, Szekeresh, on behalf of Premier, began regularly communicating with MAG representatives to obtain proceeds under the policy to cover the catastrophic losses it suffered due to the flood. And on November 8, 2013, Premier started sending formal written demands to MAG for sums allegedly owed but unpaid under the policy, beginning with a demand for $127,450. A few days later, MAG made an initial payment to Premier of $126,924 for the loss of personal property. Then, on November 25, 2013, MAG made the following additional payments to Premier: (1) $73,076 for the remaining coverage available for loss of personal property; (2) $2,575 as reimbursement for computer expenses; and (3) $18,910.68 as an initial payment of coverage for lost business income. Finally, in February 2014, MAG paid Premier $21,353.46 for remediation expenses and $42,755.62 for additional lost business income.

Thereafter, MAG withheld any additional payments for months in an effort to extract a release from Premier of any remaining claims. Indeed, according to Premier, MAG refused to pay an amount it admittedly knew was due from calculations done by its own expert until November 2014, when it paid Premier $118,949 for a business-interruption claim. And while the medical office did not reopen until

October 5, 2014, this payment only covered the business-interruption claim through February 28, 2014.

Notwithstanding the foregoing, Premier was dissatisfied with the payments it received from MAG. And between November 2013, shortly after the flooding incident, and February 2015, it sent several letters to MAG, complaining that MAG failed to fully satisfy its demands under the policy. And in its final letter, dated February 10, 2015, Premier provided the statutorily required 60-day notice under OCGA § 33-4-6[2] for bringing a bad-faith claim against MAG. In doing so, Premier advised that this letter was the final notice to MAG of its various claims, and after detailing them, Premier contended that the remaining amount MAG owed under the policy was no less than $362,239.79.

Nevertheless, in an effort to reach a settlement, Premier requested that MAG mediate the claim, and MAG agreed to do so. The mediation occurred on January 28, 2015, but it was ultimately unsuccessful. According to Premier, "during the time

[2] *See* OCGA § 33-4-6 (a) ("In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney[ ] fees for the prosecution of the action against the insurer . . . .").

4

frame of January 2015, [it] learned for the first time that MAG had determined as early as February 2014 that it would not pay any additional business[-]interruption coverage based on a frivolous and unfounded reading of the [p]olicy."

On February 10, 2017, approximately two years after the failed negotiation and over three years after the flooding damage occurred, Premier filed suit against MAG to recover amounts it believed to be due under the policy, but the action was voluntarily dismissed without prejudice on July 27, 2018. Then, on October 30, 2018, Premier filed the instant renewal action as provided for in OCGA § 9-2-61,[3] asserting breach-of-contract and bad-faith claims, and requesting attorney fees and litigation expenses. MAG answered the complaint, denying most of its allegations and asserting several affirmative defenses. On December 5, 2018, MAG filed a motion to dismiss the complaint or for a judgment on the pleadings, arguing that the complaint was time-barred by the two-year limitation period provided for under the terms of the

---

[3] *See* OCGA § 9-2-61 ("When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.").

5

insurance policy. MAG attached several exhibits to the motion, including a copy of the policy. In its response, Premier argued that MAG waived the time-limitation provision because it implicitly admitted liability under the policy and engaged in mediation with Premier within months of the two-year deadline. Premier also contended that MAG could not enforce the two-year time limitation because it breached the contract and acted in bad faith. Premier attached an affidavit from its attorney, detailing much of the factual background set forth *supra*, as well as providing information regarding a separate pending lawsuit in which MAG sued Blue Jeans Pizza to recoup payments it made to Premier under the policy.

Ultimately, the trial court granted MAG's motion to dismiss but denied its request for attorney fees. The court found that the two-year limitation period in the insurance policy was enforceable and that MAG had not waived enforcement of the provision. This appeal by Premier follows.

The factual and procedural background material to this case is largely undisputed. But in ruling on a motion to dismiss, the trial court must "accept as true all well-[pleaded] material allegations in the complaint and must resolve any doubts in favor of the plaintiff."[4] As our Supreme Court has explained.

---

[4] *Roberson*, 302 Ga. App. at 405 (punctuation omitted).

6

if, on motion to dismiss for failure to state a claim, the trial court elects to consider matters outside of the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by that code section.[5]

Here, in ruling on MAG's motion to dismiss, the trial court considered matters outside the pleadings, including exhibits attached to both the motion and Premier's response. And in doing so, the court effectively converted the motion to dismiss into one for summary judgment.[6]

Under OCGA § 9-11-56 (c), a motion for summary judgment "shall be served at least 30 days before the time fixed for the hearing." Thus, when a trial court converts a motion to dismiss for failure to state a claim into one for summary

---

[5] *Cox Enters., Inc. v. Nix*, 273 Ga. 152, 153 (538 SE2d 449) (2000) (punctuation omitted); *see* OCGA § 9-11-12 (b) ("If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Code Section 9-11-56.").

[6] For example, in its order, the trial court cites the insurance policy, which was attached to MAG's motion to dismiss the complaint, and refers to a lack of certain evidence and the "totality of the record," which suggests it did not limit its consideration to the well-pleaded allegations in the complaint.

7

judgment, "the party opposing the motion may, if he so desires, have 30 days' notice in which to prepare evidence in opposition."[7]

To comply with this procedure, the trial court had the burden of informing Premier that it would consider the exhibits attached to MAG's motion to dismiss and that, "as the consequence, [it] would have no less than 30 days within which to submit [its] own evidence in response to their motion for summary judgment."[8] But the 30 day notice can "be waived if it [is] not desired."[9] Furthermore, the trial court is not required to give the party opposing the motion "an opportunity to obtain evidence or materials if the opposing party has already had notice that such would be required."[10] Indeed, when both parties submit evidence in connection with a motion to dismiss for failure to state a claim, there is "no indication of prejudice due to the trial court's

---

[7] *Nix*, 273 Ga. at 153 (punctuation omitted).

[8] *Id.* (punctuation omitted).

[9] *Nix*, 273 Ga. at 153 (punctuation omitted); *accord Thompson-El v. Bank of Am., N.A.*, 327 Ga. App. 309, 309 (1) (759 SE2d 49) (2014); *see Brooks v. Multibank 2009-1 RES-ADC Venture, LLC*, 317 Ga. App. 264, 268 (2) (730 SE2d 509) (2012) (explaining that the 30-day notice response period required when a motion to dismiss is converted to one for summary judgment can be waived through acquiescence of the party opposing the motion).

[10] *Nix*, 273 Ga. at 154 (punctuation omitted); *accord Minnifield v. Wells Fargo Bank, N.A.*, 331 Ga. App. 512, 515 (2) (771 SE2d 188) (2015).

failure to give notice of the actual nature of the pending action."[11] And here, given that Premier responded to MAG's motion, attached exhibits, and specifically addressed the time-limitation issue, "[it] waived any formal notice from the trial court that it would consider the motion to dismiss as one for summary judgment."[12] As a result, we construe the trial court's order as one granting summary judgment to MAG.

To that end, in considering the grant or denial of a motion for summary judgment, we review the evidence *de novo*, and "all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant."[13] Summary judgment is appropriate, then, when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[14] And a defendant meets this burden when "the court is shown that the documents, affidavits, depositions[,] and other evidence in the

---

[11] *Nix*, 273 Ga. at 154 (punctuation omitted); *accord Davis*, 280 Ga. App. at 507-08 (2).

[12] *Nix*, 273 Ga. at 154 (punctuation omitted); *accord Davis*, 280 Ga. App. at 508 (2).

[13] *McCaskill v. Carillo*, 263 Ga. App. 890, 890 (589 SE2d 582) (2003).

[14] *Kelly v. Harris*, 329 Ga. App. 752, 753 (766 SE2d 146) (2014) (punctuation omitted).

record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[15] Lastly, if the moving party satisfies this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[16] With these guiding principles in mind, we turn to Premier's specific claims of error.

1. Premier argues that the trial court applied the wrong standard of review for considering a motion to dismiss or a judgment on the pleadings. We disagree.

Premier complains that MAG's motion to dismiss the complaint was based on the time-limitation provision in its insurance policy, but the complaint was not focused on that issue because it was not raised until MAG's answer and motion to dismiss. But as discussed *supra*, the trial court effectively converted the motion to dismiss into one for summary judgment, and Premier acquiesced to that decision by filing a response to the motion to dismiss and attaching exhibits of its own.[17] Indeed, while Premier's complaint did not address the time-bar issue, Premier fully briefed the issue in response to MAG's motion to dismiss. Regardless, even if the trial court

---

[15] *Id.* (punctuation omitted).

[16] *Id.* (punctuation omitted).

[17] *See supra* notes 10-12 and accompanying text.

applied the wrong standard of review to the motion to dismiss, the motion was converted to one for summary judgment, and this Court will apply the correct standard of review in this appeal.

2. Premier next argues that the trial court erred in dismissing its case based on the contractual time-limitation provision in the insurance policy despite allegations and evidence showing that MAG waived enforcement of that provision, or at a minimum, there is a jury question regarding the issue of waiver. Again, we disagree.

Section E (4) of Premier's insurance policy with MAG states:

Legal Action Against Us

No one may bring a legal action against us under this insurance [policy] unless:

a. There has been full compliance with all of the terms of this insurance [policy]; and

b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Here, it is undisputed that the damage to Premier's premises occurred on September 12, 2013, and Premier did not file suit until February 10, 2017, well after the two-year limitation period expired.

This contractual limitation period was enforceable. Indeed, we have previously held that "an insurance policy provision placing a one-year limitation upon the right of the policyholder to sue the insurer is valid and enforceable."[18] It follows, then, that the two-year limitation period in Premier's insurance policy is also valid and enforceable, and Premier does not contest the general enforceability of such a provision. Instead, Premier argues that MAG waived enforcement of the contractual time limitation by, *inter alia*, never denying liability under the policy and making numerous payments to Premier over many months. This argument is a nonstarter.

An insurance company may waive the contractual-limitation provision when the company "leads the insured by its actions to rely on its promise to pay, express or implied."[19] Indeed, if the insurer never denied liability, but "continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the [time-

---

[18] *Morrill v. Cotton States Mut. Ins. Co*., 293 Ga. App. 259, 261 (1) (666 SE2d 582) (2008); *accord McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27, 28 (1) (561 SE2d 169) (2002); *see Willis v. Allstate Ins. Co.*, 334 Ga. App. 540, 543 (779 SE2d 744) (2015) (explaining that contractual suit limitations are enforceable in Georgia, and an insured's compliance with such a provision is a condition precedent to filing a lawsuit based on the policy).

[19] *Willis*, 334 Ga. App. at 543 (punctuation omitted); *accord Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 567 (2) (569 SE2d 833) (2002).

12

limitation] clause in the contract was waived by the insurer can become a disputed question of fact for the jury.[20] Nevertheless, settlement negotiations do not always give rise to a jury question on "whether the policyholder was led to believe that he need not file suit, even if they continue throughout the policy's limitation period."[21] So, mere negotiation for settlement, unsuccessfully accomplished, is "not that type of conduct designed to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense."[22]

Here, while MAG made several payments on Premier's insurance claim, Premier was well aware that MAG did not intend to fully pay the amounts it claimed to be due. Indeed, beginning shortly after the flood occurred in September 2013 until February 2015, Premier sent numerous letters to MAG, complaining that MAG failed to fully satisfy its claims. And in the last letter, Premier even threatened to sue MAG and formally gave the requisite 60-days notice for filing a bad-faith claim against it.

---

[20] *Willis*, 334 Ga. App. at 543 (punctuation omitted); *accord Ogden*, 275 Ga. at 567 (2).

[21] *Stone Mountain Collision Ctr. v. Gen. Cas. Co. of Wisconsin*, 307 Ga. App. 394, 396 (705 SE2d 163) (2010) (punctuation omitted); *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 156-57 (1) (658 SE2d 909) (2008).

[22] *Stone Mountain Collision Ctr.*, 307 Ga. App. at 396 (punctuation omitted); *Sutton*, 290 Ga. App. at 157 (1).

At a minimum, Premier admits it knew as early as January 2015 that MAG did not intend to pay certain business-interruption expenses that Premier believed were owed under the policy.

Moreover, while MAG participated in mediation in February 2015, the parties failed to reach a settlement, and thereafter, Premier had approximately seven months in which to file suit before the two-year limitation period expired, but it failed to do so. Once again, mere negotiation for settlement, unsuccessfully accomplished, is not enough to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense.[23] And Premier has not alleged—nor is there any evidence to show—that it continued to mediate, negotiate, or even communicate with MAG at all during the seven months between the failed mediation and the expiration of the contractual limitation period. Simply put, the record is devoid of any evidence that MAG ever implied it would fully pay the amounts Premier claimed were owed after the February 2015 mediation. Nevertheless, Premier waited until February 2017 to

---

[23] *See supra* note 22 & accompanying text.

file this action. Under these circumstances, MAG did not waive enforcement of the two-year limitation period provided for in the insurance policy.[24]

3. Lastly, Premier argues that the trial court erred in allowing MAG to enforce a forfeiture provision in the policy when MAG was in breach of the agreement. Once again, we disagree.

While Premier sets forth general legal authority regarding when parties have breached an agreement, it does not specifically state how *MAG* breached the agreement at issue. Instead, Premier summarily concludes that, because the trial court was required to accept all the factual allegations in the complaint as true, the court "must assume that MAG has breached its contract with Premier and has acted in bad

---

[24] *See Auto-Owners Ins. Co. v. Hale Haven Properties, LLC*, 346 Ga. App. 39, 48-49 (1) (b) (815 SE2d 574) (2018) (holding that an insurer did not waive a two-year limitation period in the policy when the record contained no discussions, negotiations, or any interactions that would have lulled insured into believing that it would not be required to file suit against the insurer); *Stone Mountain Collision Ctr.*, 307 Ga. App. at 396-97 (holding that the insurer did not waive enforcement of a time-limitation provision in the policy when there was never an agreement on exactly what the insured would be paid, the insured rejected various offers from the insured to settle; and after that, there was no other evidence that the parties communicated again before the limitation period expired); *Modern Carpet Indus., Inc. v. Factory Ins. Assn.*, 125 Ga. App. 150, 151 (186 SE2d 586) (1971) (holding that the insurer did not waive 12–month contractual limitation period where it made a "final denial" well within the limitation period and there was "no evidence that the conduct of the company lulled or prevented plaintiff [from] bringing the action within the stipulated time").

15

faith." But setting aside that the trial court effectively converted MAG's motion to dismiss into one for summary judgment, whether a party has breached a contract or acted in bad faith are legal conclusions that can be drawn from the facts alleged. And as previously explained, while a trial court is required to consider a non-moving party's factual allegations to be true, it is *not* required to "accept the legal conclusions the non-party suggests that those facts dictate."[25] In sum, Premier is simply incorrect that the trial court was required to conclude that MAG breached the insurance policy and acted in bad faith merely because Premier alleged so in its complaint.

For all these reasons, we affirm the trial court's grant of summary judgment to MAG.

*Judgment affirmed. Rickman and Brown, JJ., concur*.

---

[25] *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 87 (764 SE2d 398) (2014); *see Love v. Morehouse Coll., Inc*., 287 Ga. App. 743, 743-44 (652 SE2d 624) (2007) (explaining that when reviewing the trial court's dismissal of a complaint, "we view all of the plaintiff's well-pleaded material allegations as true, and view all denials by the defendant as false, [but] we are under no obligation to adopt a party's legal conclusions based on these facts").

16