**THIRD DIVISION**
**DIILARD**
**MCFADDEN and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 17, 2016**

# In the Court of Appeals of Georgia

A15A1684. MCCARNEY v. PA LEX GLEN, LLC

McFADDEN, Judge.

Kevin McCarney filed this action for personal injury, among other claims, alleging that his landlord, the defendant PA Lex Glen, LLC, failed to keep his apartment in good repair and that the mold in his apartment caused his sinus condition to worsen. The trial court granted summary judgment to PA Lex Glen.

On appeal, McCarney argues that the trial court erred in granting PA Lex Glenn summary judgment on his negligence claim because the testimony of his medical expert was sufficient to create a question of fact as to causation. We agree and therefore reverse the grant of summary judgment on McCarney's personal injury claim. But we conclude that McCarney has abandoned his other arguments and therefore affirm the grant of summary judgment on his other claims.

1. *Facts*.

When reviewing the grant of the defendant's motion for summary judgment, "[w]e view the evidence in the light most favorable to the plaintiff and give [him] the benefit of all reasonable doubts and inferences." *Phillips v. King*, 214 Ga. App. 712 (448 SE2d 780) (1994) (citation omitted). Viewed in this light, the record shows that McCarney lived at the Nevadan Apartments from August, 2012 until September, 2013. In late August or early September, 2013, McCarney spoke with the tenants that lived in the unit above him who claimed that they believed they had mold in their apartment. Later that day, McCarney inspected the ventilation shaft in his apartment and saw what he described as a "black substance." McCarney's roommate also discovered that the air conditioning system was leaking in his closet, and the wall of the closet was covered in a black substance, about a foot high and a foot wide, about six inches off the ground. McCarney's apartment also experienced leaks in the bathroom ceiling, leaks in the kitchen sink, , issues with the dishwasher not draining, and problems with the air conditioning not cooling.

On September 3, McCarney e-mailed the Nevadan a notice concerning the condition of his apartment, demanding that management take immediate action to remove the mold . The Nevadan property manager observed the ventilation shaft and

2

did not see any mold. But she hired a mold inspection company to inspect the ductwork, and approved a work order for the duct's replacement. McCarney, on his own accord, hired a separate company to perform a mold analysis. On September 25, 2013, McCarney notified the Nevadan that he was cancelling the lease due to the mold contamination in the apartment.

Earlier, during his residency at the Nevadan, McCarney had started receiving treatment for sinus problems from Dr. Raymond Louis Schettino, an ENT specialist. On June 17, 2013, Schettino performed sinus surgery on McCarney.

McCarney filed suit against PA Lex Glen, the owner of the Nevadan, alleging nuisance, maintenance of a continued nuisance, damages to real and personal property, negligent and intentional infliction of emotional distress, defective construction, breach of contract, breach of covenant for quiet enjoyment, and personal injury. .Both McCarney and PA Lex Glen moved for summary judgment and the trial court granted summary judgment to PA Lex Glen on all of McCarney's claims.

2. *Personal injury.*

The trial court granted summary judgment on McCarney's personal injury claim because it found no genuine issue of material fact as to causation. McCarney argues this was error because expert testimony created a fact question on that issue.

3

"The diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses and not by lay persons. Thus, we have required expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance and a medical condition." *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 160 (3) (b) (658 SE2d 909) (2008) (citations and punctuation omitted). In toxic tort cases, proof of causation generally requires reliable expert testimony which is based, at the least, on the determination that there was reasonable probability that the negligence caused the injury. *Fouch v. Bicknell Supply Co.*, 326 Ga. App. 863, 869 (756 SE2d 682) (2014). The testimony must show a probable cause, as distinguished from a mere possible cause. Id. As detailed below, Schettino's testimony met this standard and was sufficient to withstand summary judgment on McCarney's personal injury claim.

In his deposition, Schettino testified that he removed mold from McCarney's nose through surgery. He also testified that when McCarney's symptoms did not improve after surgery, he recommended that McCarney move out of his apartment. While he could not state with a reasonable degree of medical certainty that the source of the mold he removed from McCarney's nose was the same mold at the Nevadan, he did testify that McCarney's continued sinus problems after surgery showed a high

4

likelihood that the mold in the Nevadan contributed to his condition. Schettino testified:

> Q. And can you say within a reasonable degree of medical probability that you feel the environment contributed to these symptoms? And the environment, we're referring to the apartment he lived in.

> A. Whether or not that caused it, I cannot say that it caused the original problem, but what I can say is from my clinical experience having taken care of so many of these patients, *it definitely contributed to his prolonged care and some of his problems.*

> Q. Could you say within a reasonable degree of medical probability that it aggravated his condition?

> A. Contributed in my mind would be considered aggravated; otherwise I wouldn't recommend people to be removed from the environment. I don't make that recommendation lightly.

(Emphasis supplied.) That the conditions of the mold aggravated McCarney's sinuses is not stated in terms of mere possibility; viewing the evidence in the light most favorable to McCarney, Schettino testified that to a reasonable degree of medical certainty the mold in McCarney's apartment worsened his medical condition. Schettino testified that the conditions of McCarney's apartment "definitely

5

contributed" to McCarney's condition. This testimony provides the probability testimony regarding causation needed to withstand a motion for summary judgment. See *Rodrigues v. Georgia-Pacific Corp.*, 290 Ga. App. 442, 445 (661 SE2d 141) (2008) (Compare *Estate of Patterson v. Fulton-Dekalb Hosp. Auth.,* 233 Ga. App. 706*,* 710 (2) (505 SE2d 232) (1998) (expert medical testimony that the alleged negligence "may have contributed" to the patient's injury and death was legally insufficient to establish causation)).

Moreover, even if the medical testimony had been stated only in terms of a "possible" cause, it would be sufficient because it is supplemented by probative nonexpert testimony on causation. See *Estate of Patterson v. Fulton-DeKalb Hosp. Auth*., 233 Ga. App. 706, 708 (2) (505 SE2d 232) (1998).

> There are a number of cases which, while apparently admitting that medical evidence showing only a possibility of causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that such evidence, in conjunction with other evidence, non-expert in nature, indicating that such a relation exists, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the case showing that death or physical disability would naturally and

6

probably result from the injury, is sufficient to establish the causal relation.

Id. at 708 (2).

There was evidence of significant mold in the apartment. The owner of the mold company hired by McCarney testified that in his view, "the spore counts should have been under 40,000 colony forming units in total" and that the colony-forming units per gram of carpet dust in McCarney's carpet was nearly 4 million units. McCarney's roommate also testified that he had fallen ill while living in the Nevadan. "Similarly,[McCarney's] testimony of his apparent good health and the onset of his [sinus symptoms] closely following his exposure to [mold] could suffice to fill any gaps left by the physician's testimony[.]" *Rodrigues,* 290 Ga. App. at 446.

Given the foregoing, we conclude that the trial court erred in granting summary judgment on McCarney's personal injury claim.

3. *Remaining claims.*

McCarney has abandoned any challenge to the trial court's grant of summary judgment on his claims other than personal injury by failing to include in his appellate brief argument and citations to the record in support of reversal. See Ct. App. R. 25 (c) (2). And while McCarney argues that *he* was entitled to summary judgment on his

negligence claim, he did not enumerate as error the trial court's denial of summary judgment to him. "An appealing party may not use [his] brief to expand [his] enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." *Johnson v. Bank of America,* 333 Ga. App. 539, 543 (3) (773 SE2d 810) (2015) (citations omitted).

*Judgment affirmed in part and reversed in part. Rickman, J., concurs and Dilliard, J., concurs in the judgment only.*

A15A1684. MCCARNEY v. PA LEX GLEN, LLC.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case sub judice and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).