**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**December 19, 2016**

# In the Court of Appeals of Georgia

A16A1722. BARKO RESPONSE TEAM, INC. v. SUDDUTH et al.     JE-063

ELLINGTON, Presiding Judge.

Phillip Sudduth filed this action in the State Court of Gwinnett County against Amica Mutual Insurance, Co. and Barko Response Team, Inc., alleging, inter alia, that Barko was negligent in performing mold remediation services in his home and that he was sickened by exposure to mold. The trial court denied Barko's motion for summary judgment, and Barko appeals, contending that there is no evidence that its alleged negligence caused Sudduth's illnesses and, therefore, that it is entitled to judgment as a matter of law.[1] For the reasons explained below, we reverse.

---

[1] This Court granted Barko's application for an interlocutory appeal pursuant to OCGA § 5-6-34 (b).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c). "Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "In response to a properly supported motion for summary judgment which pierces the pleadings, plaintiffs may not stand upon their allegations, but must come forward with evidence to contravene defendants' proof or suffer judgment." (Citation omitted.) *Bowden v. Pryor*, 215 Ga. App. 351 (450 SE2d 845) (1994). See also *Wade v. Howard*, 232 Ga. App. 55, 59 (499 SE2d 652) (1998) (accord).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

2

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. at 624 (1) (a).

Viewed in a light most favorable to Sudduth as the nonmovant, the record shows the following. On September 29, 2011, Phillip and Elaine Sudduth discovered that a water supply line to their refrigerator was leaking, resulting in water damage to the kitchen flooring and cabinets and the accumulation of two inches of water in the basement. Sudduth contacted his homeowner's insurer, Amica. During an inspection, Sudduth and an Amica representative found black mold under the kitchen floor tiles. Amica referred Sudduth to Barko, and he contracted with Barko to provide "emergency services" which included drying of the home over a period of a week beginning on October 21, 2011.

Sudduth filed the instant action against Amica and Barko, alleging, inter alia, that Barko, acting as Amica's representative, was negligent in failing to remediate mold in the home and that he suffered physical injury from exposure to mold.[2] Sudduth alleged that beginning in March 2012, five months after Barko serviced his home, he "began feeling sick" and he "experienced back pain, bruising, headaches, muscle and joint aches, numbness and tingling in the legs, insomnia, dizziness,

---

[2] Elaine Sudduth, Phillip Sudduth's wife, also alleged a claim for loss of consortium. The trial court's ruling applied to her derivative claim, and she joins her husband in opposing this appeal.

depression, irritability, blurred vision, memory loss, fibromyalgia, a heightened allergic reaction to various substances, and general weakness." Sudduth also asserted claims against Barko for economic loss and attorney fees.

Barko filed a motion for summary judgment on Sudduth's negligence claim for personal injury, as well as Sudduth's other claims. In its motion, Barko argued, inter alia, that Sudduth failed to present any medical expert testimony, or other evidence, of a causal relationship between Sudduth's alleged personal injuries and any actions or inactions of Barko, as required under Georgia law.[3] In response, Sudduth

---

[3] See *Cowart v. Widener*, 287 Ga. at 622, 628 (2) (b) ("[E]xpert evidence is required where a 'medical question' involving truly *specialized* medical knowledge (rather than the sort of medical knowledge that is within common understanding and experience) is needed to establish a causal link between the defendant's conduct and the plaintiff's injury." Therefore, "the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience" in "toxic tort" cases.) (citations omitted; emphasis in original); *Hunnicutt v. Hunnicutt*, 237 Ga. 497 (228 SE2d 881) (1976) ("The diagnosis and potential continuance of a disease are medical questions to be established by physicians as expert witnesses and not by lay persons.") (citations omitted); *Fouch v. Bicknell Supply Co.*, 326 Ga. App. 863, 869 (1) (756 SE2d 682) (2014) ("[I]n toxic tort cases, proof of causation generally requires reliable expert testimony which is based, at the least, on the determination that there was *reasonable probability* that the negligence caused the injury. The testimony must show at least a probable cause, as distinguished from a mere possible cause.") (citations and punctuation omitted; emphasis in original); *Seymour Electrical & Air Conditioning Svc. v. Statom*, 309 Ga. App. 677, 680 (710 SE2d 874) (2011) (Under Georgia law, even if it is "common knowledge that certain fumes are generally dangerous to breathe, a plaintiff still must present expert medical evidence establishing that the fumes caused *that particular plaintiff's* medical problems.") (citation omitted; emphasis in original); *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 160 (3) (b)

maintained that the causal link is a matter of "common knowledge. . . . It is common knowledge that people get sick from exposure to mold." He also argued that he was "diagnosed by a medical doctor. [He] eventually became very ill as a result of exposure to mold[.]" Sudduth submitted an affidavit dated November 17, 2015, from Donald Dennis, M. D., showing that he is an ear, nose, and throat specialist and is board certified in otolaryngology and head and neck surgery. In his affidavit, Dr. Dennis deposed that he treated Sudduth in 2012 "for severe mold allergies arising from exposure to high amounts of mold in his home." Dr. Dennis's affidavit attached a letter he had drafted "to whom it may concern," dated August 6, 2012, which states:

> This patient has severe fungal allergies. His home . . . has high levels of toxic mold, and therefore, it is a medical necessity that he get out of the house and not take anything with him and get into a safe place. After a hearing, the trial court denied Barko's motion for summary judgment.

In related arguments, Barko contends that the trial court erred in denying its motion for summary judgment as to Sudduth's personal injury claim, because he failed to identify any record evidence from which a jury could find a causal

---

(658 SE2d 909) (2008) (Georgia law requires "expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance and a medical condition.") (punctuation and footnotes omitted).

relationship between his alleged injuries and Barko's alleged negligence.[4] In particular, Barko contends that Sudduth is required to present expert medical testimony of causation, and that Sudduth cannot rely on a "common knowledge" argument, nor can he rely on a "temporal proximity" argument, to establish causation. Abandoning the "common knowledge" argument he made before the trial court, Sudduth concedes that, in a claim for personal injuries arising from alleged negligent exposure to toxic mold, Georgia law requires the plaintiff to present expert testimony to establish proof of specific medical causation. He contends that he presented some expert testimony on the issue of causation, that is, Dr. Dennis's affidavit and attached letter, and that the expert testimony was permissibly "supplement[ed]" with "circumstantial evidence of [the] temporal proximity" of his exposure and his illness.

As the Supreme Court of Georgia explained in a recent decision, an expert's opinion on causation in a toxic tort case is admissible only if the expert concludes that the plaintiff's exposure to a toxic substance made at least a "meaningful contribution" to his injuries. *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 291 (788 SE2d 421)

---

[4] Barko did not raise any argument on appeal regarding Sudduth's claims for economic loss (Count 2) and attorney fees (Count 5). Accordingly, we have not reviewed for error the trial court's denial of Barko's motion for summary judgment as to those claims.

(2016). As quoted above, Dr. Dennis did not give any opinion on the degree to which Sudduth's exposure to mold contributed to his injuries. Furthermore, he did not state the basis for his understanding that there were "high levels of toxic mold" in Sudduth's home (suggesting he relied solely on what Sudduth told him), and he does not give the factual basis for his opinion that the mold caused Sudduth's illnesses (no clinical examination notes, no blood test or other clinical test results, no analysis of mold spores, no epidemiological data, no animal studies, no toxicological data, no experimental results, no learned treatises reflecting a consensus in the scientific community, etc.).[5] See OCGA § 24-7-702 (To be admissible, expert testimony must be based upon sufficient facts or data, the product of reliable principles and methods, the result of the reliable application of the principles and methods to the facts.). We conclude that Dr. Dennis's affidavit and attached letter do not constitute expert testimony that is sufficient to clear the summary judgment threshold as proof that Sudduth's exposure to mold in his home made at least a meaningful contribution to

---

[5] See *Kilpatrick v. Breg, Inc.*, 613 F3d 1329, 1335 (11th Cir. 2010) (discussing various forms of evidence which may support a finding that expert testimony meets the standard of reliable scientific knowledge); *In re Accutane Products Liability*, 511 F. Supp. 2d 1288, 1290-1303 (M.D. Fla. 2007) (same); *Siharath v. Sandoz Pharm. Corp.*, 131 FSupp2d 1347, 1356-1374 (N.D. Ga. 2001), aff'd sub nom. *Rider v. Sandoz Pharm. Corp.*, 295 F3d 1194 (11th Cir. 2002) (same).

his alleged injuries. *Seymour Electrical & Air Conditioning Svc. v. Statom*, 309 Ga. App. 677, 681 (710 SE2d 874) (2011) (Where there was no expert medical testimony submitted to the trial court to establish the causal connection between the plaintiffs' respiratory conditions and the carbon monoxide in their house, the trial court erred in denying the defendant's motion for summary judgment.); *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 159-160 (3) (b) (658 SE2d 909) (2008) (Where there was no expert medical testimony submitted to the trial court to establish the causal connection between the plaintiffs' respiratory conditions and the mold in their house, summary judgment was proper for the defendant.) (punctuation and footnotes omitted).[6]

Moreover, contrary to Sudduth's contention, we conclude that the gaps left by the scant medical testimony are not filled in by probative nonexpert testimony of a causal link between Barko's alleged negligence and his alleged injuries.[7] This is not

---

[6] Cf. *McCarney v. PA Lex Glen, LLC*, 336 Ga. App. 271, 273 (784 SE2d 438) (2016) (physical precedent only) (Testimony from the plaintiff's doctor that "to a reasonable degree of medical certainty the mold in [the plaintiff's] apartment worsened his medical condition" and that "the conditions of [the] apartment 'definitely contributed' to [the plaintiff's] condition" provided the probability testimony regarding causation needed to withstand a motion for summary judgment.).

[7] See *Estate of Patterson v. Fulton DeKalb Hosp. Auth.*, 233 Ga. App. 706, 708 (2) (505 SE2d 232) (1998) (referencing "a number of cases which, while apparently admitting

a case where the plaintiff was apparently in good health before the toxic exposure and

experienced the onset of symptoms closely following his exposure to the toxin.[8] Here,

---

that medical evidence showing only a possibility of causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that such evidence, in conjunction with other evidence, non-expert in nature, indicating that such a relation exists, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the case showing that death or physical disability would naturally and probably result from the injury, is sufficient to establish the causal relation") (citations and punctuation omitted); but see *Kilpatrick v. Breg, Inc.*, 613 F3d at 1343 (The plaintiff could not "overcome the fact that [the physician's] specific causation testimony [was] rooted in a temporal relationship" that failed to show a causal relationship between the plaintiff's medical condition and the insertion of a medical device manufactured by the defendant. "Proving a *temporal* relationship does not establish a *causal* relationship. Simply because a person takes drugs and then suffers an injury does not show causation. This is a classic 'post hoc ergo propter hoc' fallacy which assumes causation from temporal sequence. It literally means 'after that, because of this.' It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.") (citations and punctuation omitted; emphasis in original); *McClain v. Metabolife Intl., Inc.* 401 F3d 1233, 1243, 1254 (11th Cir. 2005) ("[P]roving a *temporal* relationship between [consuming a nutritional supplement] and the onset of symptoms does not establish a *causal* relationship." Therefore, "the temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation.") (citations and punctuation omitted; emphasis in original).

[8] Cf. *McCarney v. PA Lex Glen, LLC*, 336 Ga. App. at 274 (2) (784 SE2d 438) (2016) (physical precedent only) (stating in dicta that, "even if the medical testimony had been stated only in terms of a 'possible' cause, it would [have been] sufficient because it [was] supplemented by probative nonexpert testimony on causation[,]" specifically, the plaintiff's "testimony of his apparent good health and the onset of his sinus symptoms closely following his exposure to mold could suffice to fill any gaps left by the physician's testimony") (citations and punctuation omitted).

the record showed that, for years before the September 2011 water leak that Barko was called in to remediate, Sudduth had lived and worked in mold-contaminated environments and that he had suffered multiple health issues including respiratory problems, chronic obstructive pulmonary disease (attributed to a history of cigarette smoking), back pain, and chronic pain syndrome. In addition, as Barko notes, Sudduth has not shown such a temporal proximity as might authorize an inference of cause-and-effect, given the five-month gap between the development of the mold and the onset of his symptoms. For the foregoing reasons, we conclude that the trial court erred in denying Barko's motion for summary judgment on Sudduth's personal injury claim and Elaine Sudduth's claim for loss of consortium.

*Judgment reversed. Branch and Mercier, JJ., concur*.