**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 25, 2025**

# In the Court of Appeals of Georgia

A25A0468. ARNOLD v. FAIRWAY MANAGEMENT, INC. et al.

HODGES, Judge.

Marvalyne Arnold sued Fairway Management, Inc., Hampton Court, L.P., JES Holdings, LLC, and Kimberly Booker (collectively, "the defendants") in November 2021 for damages after Arnold allegedly experienced coughing and sneezing while living in an apartment managed by Fairway and owned by Hampton Court.[1] After the close of discovery, the defendants contemporaneously filed motions to exclude testimony by Arnold's expert witness and for summary judgment due to Arnold's failure to show causation, and the Superior Court of Fulton County granted the defendants' motions. On the second day of the ensuing trial of Arnold's only

---

[1] JES is a holding company and an additional owner of Hampton Court. Booker was employed by Fairway as a property manager at Hampton Court.

remaining claim against Fairway and Hampton Court, the trial court dismissed Arnold's action for want of prosecution when she failed to appear. Arnold appeals each of these orders. Finding no error, we affirm.

Under Georgia law,

> [s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. . . . In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Barko Response Team v. Sudduth*, 339 Ga. App. 897, 898 (795 SE2d 198) (2016).

(a) *Factual Background.* Viewed under the summary judgment standard, the record reveals that Arnold moved into Apartment 402 of the Hampton Court Apartments at 100 South Hampton Road, Hampton, Georgia, in 2014. In 2015 or

2016, Arnold's daughter gave Arnold two Yorkie dogs that lived with Arnold until she left Hampton Court in August of 2018.

Arnold described having "[s]ome [pre-existing] allergy issues" that continued after she moved to Hampton Court. Arnold previously had been diagnosed with allergies and claimed that she was "allergic to every damn thing[,]" but she acknowledged that an allergy test for mold was negative. During her time at Hampton Court, Arnold stated that she "did a lot of coughing and sneezing" and that she self-treated with Benadryl. Arnold also claimed that her allergies would "come in waves" at different times of the year, particularly in summer. Her coughing and sneezing issues continued "[a] little bit" after she left Hampton Court, although she characterized the issues as "[n]ot as bad."

In early August 2018, Arnold discovered suspected mold in her laundry room at Hampton Court and reported it to Booker on or about August 3, 2018. An initial environmental inspection isolated the source of the mold as Arnold's guest bedroom, which was used primarily by her two dogs. A later inspection of Arnold's apartment revealed that the carpet had been severely damaged, as Arnold had allowed her dogs to urinate freely on the carpet. As a result, Fairway sent Arnold a notice to terminate

her lease agreement effective September 13, 2018. Arnold moved out shortly thereafter. A mold inspection Arnold commissioned found aspergillus/penicillum throughout Arnold's bedroom, front patio, laundry room, and utility closet.

On August 10, 2020, Arnold filed suit for injuries she allegedly sustained as a result of her exposure to mold in the apartment. Arnold voluntarily dismissed the original action without prejudice on May 11, 2021.

Arnold then filed the present renewal action on November 9, 2021 against Fairway, Hampton Court, JES, and Booker, asserting causes of action for (i) negligence, premises liability, failure to warn, nuisance, trespass, breach of the implied warranty of habitability, breach of the implied warranty of quiet enjoyment, fraud, intentional misrepresentation, negligent infliction of emotional distress, punitive damages, and attorney fees against each defendant; (ii) breach of contract and breach of the implied covenant of good faith and fair dealing against Fairway, Hampton Court, and Booker; and (iii) respondeat superior, negligent hiring and retention, and negligent training and supervision against Fairway, Hampton Court, and JES.

(b) *Arnold's Expert Witness*. Arnold disclosed Dr. Thomas Fariss, a board-certified physician in internal medicine and occupational medicine, as an expert

witness on July 1, 2022. According to Arnold, Dr. Fariss was expected to testify, "to a reasonable degree of medical probability, [that] Arnold's exposure to mold in her apartment caused or meaningfully contributed to her allergy rhinitis." Moreover, Dr. Fariss was expected to testify "about the cause of the mold in [Arnold's] apartment and the fact that it was not caused by her dogs[.]"

The defendants moved to exclude Dr. Fariss' testimony, asserting that: (i) he was not qualified to render an opinion as to the cause or quantity of mold in Arnold's apartment; (ii) his opinions were not the product of reliable principles and methods in that, inter alia, he did not employ a differential diagnosis or rule out other potential causes of Arnold's alleged condition, and he did not rely on all relevant information available to him before formulating his opinion; and (iii) his opinions would not assist the jury. Following a hearing, the trial court granted the defendants' motion to exclude Dr. Fariss' testimony. Generally, the trial court concluded that "the opinions proffered by Dr. Fariss . . . do not meet the reliability factor" and that "the foundation relied upon by Dr. Fariss for his opinions was not reliable and was not grounded in proper methods and procedures, and instead, appeared to be speculation." More particularly, the trial court concluded that Dr. Fariss' opinions lacked reliability

because he failed to: (i) use a differential diagnosis to rule out other potential causes of Arnold's maladies; or (ii) review all relevant information available to him, including examining or interviewing Arnold herself, reading Arnold's deposition, and reviewing Arnold's complete medical records.[2]

(c) *The Defendants' Summary Judgment Motions.* Contemporaneously with their motion to exclude Dr. Fariss' testimony, the defendants moved for summary judgment, asserting that Arnold had not shown causation. The trial court agreed and granted the defendant's motions following a hearing; specifically, the trial court awarded summary judgment in full to Booker and JES, and granted summary judgment to Fairway and Hampton Court on all of Arnold's tort causes of action.[3] As

---

[2] As a result, the trial court's order excluding Dr. Fariss' testimony rested upon the second of the three arguments the defendants presented: that his opinions were not the product of reliable principles and methods. Accordingly, and as noted infra, we do not consider whether Dr. Fariss' testimony was properly excluded under the defendants' two additional arguments.

[3] These causes of action included Arnold's claims for negligence; failure to warn; negligent hiring, retention, training, and supervision; respondeat superior; negligent infliction of emotional distress; premises liability; nuisance; trespass; fraud; misrepresentation; the general tort liability of landlords codified at OCGA § 44-7-14; punitive damages; and attorney fees.

a result of the trial court's order, Arnold's only surviving claim was for breach of contract against Fairway and Hampton Court.

(d) *The Dismissal of the Remainder of Arnold's Action*. On the first day of the ensuing trial against Fairway and Hampton Court, Arnold was outside the courtroom when proceedings began because "she just want[ed] to be outside." The trial court asked a deputy to escort Arnold into the courtroom. At the conclusion of the first day of trial, the trial court noted that Arnold was again absent and that the court "[had] not excused anyone." Arnold's counsel stated only that counsel had spoken with Fairway's and Hampton Court's respective counsel and that Arnold "had to go" for reasons that are not explained in the record. The trial court stated that Arnold was "the reason we're all here" and that "[w]hen we're here, she's here." Arnold's counsel indicated he would talk to Arnold.

There is no transcript of the second day of trial in the record. However, in a February 28, 2024 order memorializing its January 24, 2024 ruling from the bench, the trial court noted that it dismissed Arnold's case for want of prosecution due to Arnold's "repeated unexcused absence[s] from the courtroom [even after the court] specifically instructed [Arnold's] Counsel that [Arnold] needed to be present at all

times when court was in session." The court found that, when court was called into session at 9:00 a.m. on the second day of trial, Arnold was not present and that her absence "was [her] third unexcused absence from Court during the two days of trial proceedings." The trial court apparently waited until 9:30 a.m., inquired as to Arnold's continued absence, and learned from Arnold's counsel that Arnold was "delayed by traffic." At least one of the defense counsel present moved to dismiss Arnold's case for want of prosecution.[4] The trial court concluded that the basis for Arnold's absence "was attributable to the same general factors that all other participants in the trial had successfully navigated" and that "[n]ot a single juror, attorney, or member of the Court's chambers staff was late in arriving." As a result, the trial court dismissed Arnold's case for want of prosecution.

At that juncture, Hampton Court's counterclaim remained pending, and the trial court indicated it would schedule a trial on the counterclaim for its "next available trial calendar." However, in a July 3, 2024 order denying Arnold's motion for reconsideration following the dismissal for want of prosecution, the trial court stated that Hampton Court "did not seek to proceed on its counterclaim and did not

---

[4] As noted, there is no transcript of the second day of trial, and the trial court's order states that "Defendant" moved to dismiss Arnold's case.

raise this issue with the Court prior to excusal of the jury. The Court can only construe this as [Hampton Court's] abandonment of its claims."[5] This appeal followed.[6]

1. First, Arnold argues that the trial court erred in excluding Dr. Fariss' expert testimony. In particular, Arnold contends the trial court improperly focused on Dr. Fariss' proposed testimony concerning the cause of mold in Arnold's apartment without analyzing his testimony as to whether the mold exacerbated Arnold's coughing and sneezing. Arnold's argument mischaracterizes the trial court's conclusions.

"OCGA § 24-7-702 . . . governs the admissibility of expert testimony and requires that the trial court act as gatekeeper to ensure the relevance and reliability of

---

[5] Hampton Court did not file a cross-appeal from the trial court's order denying Arnold's motion for reconsideration.

[6] Inasmuch as the trial court's July 3, 2024 order denying Arnold's motion for reconsideration clearly stated, for the first time, that Arnold's case was at an end in view of Hampton Court's failure to pursue its counterclaim, we conclude that Arnold's August 2, 2024 notice of appeal was timely and that we have jurisdiction to consider her appeal. See generally OCGA § 5-6-34 (a) (1) (B) ("Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts . . . : [a]ll final judgments, that is to say, where the case is no longer pending in the court below[.]").

9

expert testimony." (Citation and punctuation omitted.) *Ovation Condo. Assn. v. Cox*, 374 Ga. App. 681, 686 (1) (913 SE2d 819) (2025). "[T]he importance of the trial court's gatekeeper role . . . cannot be overstated." *HNTB Ga. v. Hamilton-King*, 287 Ga. 641, 645 (2) (697 SE2d 770) (2010).

> [T]he objective of [the gatekeeper] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

(Citation and punctuation omitted.) Id.; see also *Wilson v. Redmond Constr.*, 359 Ga. App. 814, 819-820 (2), 820-821 (3) (860 SE2d 118) (2021).

> To that end, OCGA § 24-7-702 (b) provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based upon sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

Accordingly, "a trial court must assess three aspects of proposed expert testimony — the qualifications of the expert, the reliability of the testimony, and the relevance of the testimony — to discharge its responsibilities as a gatekeeper." (Citation and punctuation omitted.) *Ovation*, 374 Ga. App. at 687 (1). "Under Rule 702, the trial court has broad discretion to admit or exclude expert testimony." Id at 686 (1). "[T]he determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) *Smith v. CSX Transp.*, 343 Ga. App. 508, 510 (1) (806 SE2d 890) (2017).

Relevant to this case, "in a claim for personal injuries arising from alleged negligent exposure to toxic mold, Georgia law requires the plaintiff to present expert testimony to establish proof of specific medical causation." *Sudduth*, 339 Ga. App. at 900. Accordingly, a plaintiff must submit "expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance

11

and a medical condition." (Citation and punctuation omitted.) *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 160 (3) (b) (658 SE2d 909) (2008); see also *Ellis v. Hartford Run Apts.*, 335 Ga. App. 118, 122 (2) (c) (i) (779 SE2d 103) (2015) (physical precedent only). "[A]n expert's opinion on causation in a toxic tort case is admissible only if the expert concludes that the plaintiff's exposure to a toxic substance made at least a meaningful contribution to [her] injuries." (Citation and punctuation omitted.) *Sudduth*, 339 Ga. App. at 900.

(a) *Qualifications of the Expert.* In her July 1, 2022 disclosure in this case, Arnold tendered Dr. Fariss as an expert witness to testify, "to a reasonable degree of medical probability, [that] Arnold's exposure to mold in her apartment caused or meaningfully contributed to her allergy rhinitis" as well as "the cause of the mold in [Arnold's] apartment and the fact that it was not caused by her dogs[.]"[7] The trial court did not render a decision concerning Dr. Fariss' qualifications to offer an expert opinion,

---

[7] Curiously, in her briefing to this Court, Arnold attempted to dilute the nature of Dr. Fariss' testimony, claiming that what caused the mold "was not the primary purpose of his retention[;]" instead, she asserted that "the larger issue for which he was retained . . . was to determine whether the mold that was present was the cause of [her] exacerbated symptoms." Arnold then asserted that the trial court conflated the two issues. In any event, the record confirms that Arnold disclosed Dr. Fariss as an expert in both topics.

either as to the cause of the mold in Arnold's apartment or the extent to which the mold contributed to her symptoms, in its order excluding his testimony. Moreover, as no party has challenged in this Court Dr. Fariss' qualifications generally, we turn next to the reliability of his testimony.[8] See generally *Dept. of Community Health v. Houston Hosps.*, 365 Ga. App. 751, 769 (V) (2), n. 62 (880 SE2d 245) (2022) (noting that party abandoned argument by failing to raise it on appeal).

(b) *Reliability of the Testimony.* Dr. Fariss deposed that, as part of the evaluation of a patient for mold exposure, he would obtain a medical history, including other comorbidities, "a history of allergic disease," smoking history, "and other potential causes of lung disease." Dr. Fariss also stated that the reliability of journals he consulted, including for his work in this case, "varies for every journal[,]" but claimed they can be "a good source of medical literature on occupational and environmental medicine."

---

[8] Nevertheless, we note that Arnold asserted that Dr. Fariss is board certified in internal medicine and occupational medicine. Dr. Fariss also testified that he graduated from medical school at the University of Virginia in 1987, completed an internal medicine internship and residency at Georgetown University Hospital, and completed a fellowship in occupational and environmental medicine at George Washington University.

However, Dr. Fariss admitted that he only reviewed some of Arnold's medical records from a single medical provider, did not review any of Arnold's medical records prior to her move to Hampton Court, did not know when Arnold's symptoms started, and did not know whether Arnold improved after she left Hampton Court. He also acknowledged that he did not know the kind of mold found in Arnold's apartment, that Arnold's dogs could have been a source of the mold due to their frequent indoor urination, and that the amount of mold in a setting "[a]bsolutely" matters but that he did "not really" incorporate that information in his opinion. Dr. Fariss did not treat Arnold, did not speak with Arnold, did not review any depositions, and did not prepare a written report. Critically, Dr. Fariss did not "formally rule everything else out" and admitted that he did not know whether mold exposure caused Arnold's allergic rhinitis, but was "fairly confident that it at least exacerbated the asthma and allergic rhinitis" and "fairly certain that the mold [was] contributing to her symptoms. . . ." Ultimately, Dr. Fariss "[thought] that the mold in [Arnold's] apartment — her mold exposure . . . exacerbated her symptoms of allergic rhinitis[;]" however, he added that "once you have visible mold in an . . . indoor environment, .

14

. . by definition, you have a mold problem, an excess problem. That's enough to lead to aggravation or [exacerbation] of allergic rhinitis-type symptoms."

"[E]xpert opinions employing differential diagnosis must be based on scientifically valid decisions as to which potential causes should be ruled in and ruled out." (Citation and punctuation omitted.) *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 280 (5) (658 SE2d 603) (2008).[9] Dr. Fariss essentially admitted that a differential diagnosis did not occur in this case. In its order granting the defendants' motion to exclude Dr. Fariss' testimony, the trial court concluded that "the opinions proffered by Dr. Fariss . . . do not meet the reliability factor" and that "the foundation relied upon by Dr. Fariss for his opinions was not reliable and was not grounded in proper

---

[9] Cf. *Sudduth*, 339 Ga. App. at 900-901 (reversing denial of defendant's summary judgment motion where expert "did not state the basis for his understanding that there were 'high levels of toxic mold' in [the plaintiff's] home . . . and . . . [did] not give the factual basis for his opinion that the mold caused [the plaintiff's] illnesses (no clinical examination notes, no blood test or other clinical test results, no analysis of mold spores, no epidemiological data, no animal studies, no toxicological data, no experimental results, no learned treatises reflecting a consensus in the scientific community, etc.)"); *Sutton*, 290 Ga. App. at 159-160 (3) (b) (reversing denial of defendant's summary judgment motion due to absence of "any expert medical testimony submitted to the trial court establishing a causal link between the respiratory conditions of [the plaintiff] or her daughter and the mold in the house" and noting that "[t]he diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses") (citation and punctuation omitted).

methods and procedures, and instead, appeared to be speculation." More particularly, the trial court concluded that Dr. Fariss' opinions lacked reliability because he failed to: (i) use a differential diagnosis to rule out other potential causes of Arnold's coughing and sneezing; or (ii) "exercise the same level of intellectual rigor he would have if he were treating a patient in a clinical setting" because he did not review all relevant information available to him, including communicating with Arnold herself, reading Arnold's deposition, and reviewing Arnold's complete medical records. Compare *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 691 (12) (689 SE2d 62) (2009) (finding no abuse of discretion in allowing expert witness to testify, despite "some speculation or conjecture," after outlining extensive factual information reviewed by expert witness and noting that expert "considered and eliminated all other reasonable possibilities" for cause of water intrusion).

Accordingly, based upon the evidence we have outlined, "[w]e perceive no abuse of discretion in the trial court's conclusion that [Dr. Fariss'] testimony was [not] shown to be 'the product of reliable principles and methods. . . .'" (Citation and punctuation omitted.) *Mason*, 283 Ga. at 279 (5), citing predecessor statute to OCGA § 24-7-702 (b) (3); *HNTB Ga.*, 287 Ga. at 645-646 (2); *Wilson*, 359 Ga. App. at 820

16

(3). We therefore affirm the trial court's order granting the defendants' motion to exclude Dr. Fariss' testimony.

(c) *Relevance of the Testimony*. Having determined in Division 1 (b) that Dr. Fariss' testimony was unreliable, we need not evaluate the relevance of his testimony. See generally *Scapa Dryer Fabrics v. Knight*, 299 Ga. 286, 290, n. 6 (788 SE2d 421) (2016) (noting that Supreme Court did not address reliability of expert's opinion because case was resolved on relevance). Nor do we need to address Arnold's remaining argument that the trial court erred in concluding that Dr. Fariss' opinion would not assist the jury. See generally id.

2. Next, Arnold contends that the trial court erred in granting the defendants' motions for summary judgment. We disagree.

OCGA § 9-11-56 (e) provides that

[w]hen a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

At the outset, we note that Arnold's summary judgment arguments may be grouped into two categories: (i) her tort-related claims; and (ii) her contract-based claims. We address each in turn.

(a) *Tort Claims*. In her complaint, Arnold asserted causes of action for (i) negligence, premises liability, failure to warn, nuisance, trespass, fraud and intentional misrepresentation, negligent infliction of emotional distress, punitive damages, and attorney fees against each defendant; and (ii) respondeat superior, negligent hiring and retention, and negligent training and supervision against Fairway, Hampton Court, and JES. The trial court awarded summary judgment to the relevant defendants on each of these claims, holding that the claims fail as a matter of law "[b]ecause Plaintiff has no expert testimony to opine on causation[.]" The trial court further held that Arnold's causes of action for punitive damages and attorney fees also failed because they were derivative claims.

We find no error. "In a toxic tort case, the plaintiff must prove both general causation, that a substance is capable of causing a particular injury or condition, and specific causation, that a substance made a meaningful contribution to a particular individual's injury." (Citation and punctuation omitted.) *Ovation*, 374 Ga. App. at

698 (2) (a); see also *Sudduth*, 339 Ga. App. at 900 ("[I]n a claim for personal injuries arising from alleged negligent exposure to toxic mold, Georgia law requires the plaintiff to present expert testimony to establish proof of specific medical causation."). As we have noted, a plaintiff must submit "expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance and a medical condition." (Citation and punctuation omitted.) *Sutton*, 290 Ga. App. at 160 (3) (b); see also *Sudduth*, 339 Ga. App. at 900.

Thus, "absent reliable expert testimony that exposure to [mold] contributed to the development of [Arnold's] condition, there is insufficient evidence to create a jury issue as to causation." (Citation and punctuation omitted.) *Ovation*, 374 Ga. App. at 698 (2) (a). And given our conclusion in Division 1 (b) that the trial court correctly excluded Dr. Fariss' expert testimony as to causation,[10] the defendants were entitled to summary judgment on Arnold's tort claims.[11]

---

[10] Arnold concedes that, at least as to her tort causes of action, we need only address those claims if we reverse the trial court's order excluding Dr. Fariss as an expert.

[11] Of course, if, as Arnold now contends, Dr. Fariss was not disclosed as an expert witness as to what caused the mold, and Arnold disclosed no other expert witness to testify as to the cause of the mold when such proof is required to support her claims, summary judgment in the defendants' favor would again be proper. See

As for her arguments concerning her fraud claim, Arnold contends that it was "not necessary for [her] to prove fraud definitively" at the summary judgment stage. While true, it also does not absolve her from her duty to come forward with "specific facts showing that there is a genuine issue for trial" once a summary judgment motion has been made and suppoted. OCGA § 9-11-56 (e). But with a single, irrelevant citation to the record, and a boilerplate citation to a case listing the elements of fraud, Arnold has failed to support this branch of her enumeration of error. See Court of Appeals Rule 25 (a) (7) ("At a minimum, the appellant's brief must include . . . [t]he argument, which must cite the authorities relied on. . . ."); see also *Callaway v. Willard*, 351 Ga. App. 1, 12-13 (2) (c) (830 SE2d 464) (2019) ("[A]n appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted); *Murphy v. Freeman*, 337 Ga. App. 221, 224 (1) (787 SE2d 755) (2016). As a result, this argument is deemed abandoned. See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in

*Sudduth*, 339 Ga. App. at 901-902.

the brief by citation of authority or argument may be deemed abandoned."); *Eason Publications v. Nationsbank of Ga.*, 217 Ga. App. 726, 731 (5) (458 SE2d 899) (1995).

(b) *Contract Claims.* Arnold's complaint also asserted claims for: (i) breach of contract and breach of the implied covenant of good faith and fair dealing against Fairway, Hampton Court, and Booker; and (ii) breach of the implied warranty of habitability and breach of the implied warranty of quiet enjoyment against each defendant. The trial court granted JES and Booker's summary judgment motion, finding that they were not parties to any contract with Arnold, leaving only the breach of contract claims against Fairway and Hampton Court.

(i) *Breach of Contract against Fairway and Hampton Court.* To the extent Arnold contends that the trial court erred in granting Fairway and Hampton Court's summary judgment motion on her breach of contract claim, the trial court denied those motions, and neither Fairway nor Hampton Court filed a cross-appeal from that order. Accordingly, there is nothing for us to review.

(ii) *Breach of Contract against Booker.* Arnold also contends that the trial court erred in granting Booker's motion for summary judgment on her claim for breach of contract. However, the entirety of Arnold's argument is that her lease "was signed by

21

. . . Booker, who was employed by . . . Fairway." This is hardly the sort of argument required by our rules. See Court of Appeals Rule 25 (a) (7); see also *Callaway*, 351 Ga. App. at 12-13 (2) (c). Accordingly, this argument is deemed abandoned. See Court of Appeals Rule 25 (d) (1); *Eason Publications*, 217 Ga. App. at 731 (5).

(iii) *Derivative Breach of Contract Claims against Fairway, Hampton Court, and Booker*. What is left for our consideration, then, are Arnold's claims for breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of habitability, and breach of the implied warranty of quiet enjoyment. Once again, however, Arnold fails to support her argument with authority. See Court of Appeals Rule 25 (a) (7). In fact, aside from a boilerplate citation to OCGA § 13-1-1 and to two cases concerning the elements of a contract, Arnold cites no relevant authority to support her argument, nor does she engage in any discussion of the breaches of the implied warranties she asserted. Legal argument requires, "at a minimum, a discussion of the appropriate law as applied to the relevant facts[,]" and "a mere reference to a case citation to support a conclusory allegation is not the type of meaningful argument contemplated by our rules." (Citations and punctuation omitted.) *Willis v. Cheeley*, 363 Ga. App. 341, 344 (1), n. 4 (870 SE2d 907) (2022); see

also *Murphy*, 337 Ga. App. at 224 (1). Like the arguments discussed in Division 2 (b) (ii), supra, these arguments are deemed abandoned. See Court of Appeals Rule 25 (d) (1); *Eason Publications*, 217 Ga. App. at 731 (5).

3. Finally, Arnold contends the trial court erred in granting the defendants' motion to dismiss for want of prosecution when she did not appear timely for the second day of trial despite prior warnings by the trial court. We are not persuaded.

Uniform Superior Court Rule 14 provides:

> On its own motion or upon motion of the opposite party, the court may dismiss without prejudice any civil action, or where appropriate, any pleading filed on behalf of any party upon the failure to properly respond to the call of the action for trial or other proceeding.

In that vein, superior courts are vested with authority to control their own dockets and to regulate the business of their respective courts. See *Kraft, Inc. v. Abad*, 262 Ga. 336 (417 SE2d 317) (1992). Accordingly, "[w]e review a dismissal based on lack of prosecution under an abuse of discretion standard." (Citation and punctuation omitted.) *Roberts v. Eayrs*, 297 Ga. App. 821 (678 SE2d 535) (2009).

In this case, Arnold was initially absent from the courtroom when her case was called for trial. The trial court noted Arnold's absence, inquired as to her

23

whereabouts, and learned that she was outside the courtroom for no apparent reason other than "she just want[ed] to be outside." The trial court then directed a deputy to escort Arnold into the courtroom. Near the end of the first day of trial, the trial court again noticed Arnold's absence and stated that the court "[had] not excused anyone." Arnold's counsel stated only that Arnold "had to go" without offering any further explanation. The trial court ordered Arnold to be present when court was in session, and Arnold's counsel indicated he would talk to Arnold.

There is no transcript of the second day of trial, but the trial court's February 28, 2024 order dismissed the remainder of Arnold's case for want of prosecution after reviewing Arnold's "repeated unexcused absence[s] from the courtroom and specifically instruct[ing] [Arnold's] Counsel that [Arnold] needed to be present at all times when court was in session." The trial court's order was, therefore, based upon Arnold's conduct at trial. In her brief to this Court, Arnold contends that she was absent due to "a fatality on the interstate." However, "[i]t is the duty of the party asserting error to show it by the record[;] [a]ssertions of evidence in briefs or enumerations of error cannot satisfy this duty." (Citation and punctuation omitted.) *Fine v. Fine*, 281 Ga. 850, 852 (2) (642 SE2d 698) (2007); see also *Hipple v. Simpson*

*Paper Co.*, 234 Ga. App. 516, 519 (5) (507 SE2d 156) (1998) (declining to consider statements in party's brief concerning conduct at trial absent a transcript). Thus, we affirm the trial court's order dismissing Arnold's remaining claim for want of prosecution. See, e.g., *Fine*, 281 Ga. at 852 (2); *Fleming v. Advanced Stores*, 301 Ga. App. 734, 736 (688 SE2d 414) (2009) ("[T]he burden is on the party alleging error to show it affirmatively by the record. When the burden is not met, the judgment complained of is assumed to be correct and must be affirmed.") (citation and punctuation omitted).

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*